FILED

2007 May-17  AM 10:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, | } } } | |
| Plaintiff, | } } | CIVIL ACTION NO. 06-AR-1995-S |
| v. | } } | |
| ROGER DALE PETERSON, et al., | } } | |
| Defendants. | } | |

## MEMORANDUM OPINION

Before this court is the motion of plaintiff, Nationwide Mutual Fire Insurance Company ("Nationwide"), for summary judgment against defendants, Roger Dale Peterson ("Roger Peterson"), Kathy Peterson ("Kathy Peterson"), and Pets America, Inc.  Also a defendant in this action is George E. Johnson ("Johnson"), who is suing the Petersons and Pets America, Inc., separately in state court.

Nationwide filed a complaint for declaratory judgment in this court, seeking a determination of its rights and obligations in connection with an insurance policy it issued to the Petersons. Nationwide claims that it is under no duty to defend or indemnify the Petersons in connection with Johnson's suit against them.

For the reasons discussed below, the court finds that Nationwide is entitled to judgment as a matter of law and will grant its motion for summary judgment.

-1-

## I. Material Undisputed Facts[1]

In April 2003, Nationwide issued a homeowner's insurance policy (the "insurance policy") to the Petersons.  Kathy Peterson was the named insured.  Roger Peterson, as the spouse of Kathy Peterson, is defined as an insured by the policy language.  On September, 16, 2003, while the insurance policy was in effect, Johnson attempted to serve Roger Peterson with a complaint arising out of a breach of contract action pending in the Circuit Court of Shelby County.  According to the incident report that Johnson filed with the Shelby County Sheriff's Department, Roger Peterson attacked Johnson, striking him in the head with a heavy object. The blow knocked Johnson to the ground, whereupon Roger Peterson continued to punch and kick him.  During the assault, Roger Peterson wrested Johnson's revolver away from him, pointed the weapon at Johnson's head, and forced Johnson to retreat from the property.  Roger Peterson retained possession of the revolver. Shortly after Johnson reported the altercation, Peterson was taken into custody by officers of the Shelby County Sheriff's Department.

Roger Peterson denies all claims made against him by Johnson. However, he entered a "best interest" plea agreement and was given a six-month sentence, which was suspended for twenty-four months of

---

[1] Some of the facts pertaining to the Board's motion are in dispute.  For purposes of this opinion, the court will consider these facts in the light most favorable to the Petersons, the non-moving parties.

probation.  Roger Peterson was also ordered to pay Johnson $530.00 in restitution.

On September 15, 2005, Johnson filed civil suit in state court against Roger and Kathy Peterson and Pets America, Inc., their company, claiming compensatory and punitive damages arising out of the alleged attack.  On October 6, 2005, over two years after the incident occurred, Roger Peterson informed Robert Langston, the Nationwide agent who sold the Petersons the insurance policy, of the suit.  This was the first notice of the incident given to Nationwide.  At no time before he filed suit did Johnson indicate to the Petersons that it was his intention to file suit against them.

The insurance policy contains the following pertinent terms and conditions:

**Insuring Agreement**
We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premiums and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages you have chosen are shown on the Declarations.  This policy applies only to loss which occurs while the policy is in force.

**Definitions**
Certain words and phrases used in this policy are defined as follows:
                      * * *

2.    "YOU" and "YOUR" refer to the named insured shown in this policy who resides at the residence premises.  These terms also mean your spouse who resides at the same residence premises:

a) your relatives.
b) any other person under age 21 and in the care of you or your relatives.

Section II - Liability Coverages
Coverage Agreements
COVERAGE E - PERSONAL LIABILITY
We will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property.  We will provide a defense at our expense by counsel of our choice.  We may investigate and settle any claim or suit.  Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability.

* * *

LIABILITY CONDITIONS

* * *

3.   Duties after loss.
     In case of a loss you must perform the following duties. You must cooperate with us in seeing that these duties are performed.
     a)   Give notice to us or our agent as soon as practicable setting forth:
          (1)  Identity of the policy and insured.
          (2)  Time, place, and facts of the accident or occurrence.
          (3)  Names and addresses of the claimant and witnesses
     b)   Immediately forward to us every document relating to the accident or occurrence.

     * * *

## II. Summary Judgment Standard

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).  The

court can enter summary judgment only if it is shown "that there is
no genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The court does not "weigh the evidence and determine the
truth of the matter," but solely "determine[s] whether there is a
genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 242-43 (1986) (citations omitted).

### III. Analysis

Nationwide argues that it is under no duty to defend or
indemnify because the Petersons failed to comply with the provision
in the insurance policy requiring notice be given "as soon as
practicably possible."  In response, the Petersons make two primary
arguments: first, curiously, they argue that they had no duty to
notify Nationwide of the incident because neither a "loss" nor an
"accident or occurrence," as defined in the insurance agreement,
occurred when Roger Peterson allegedly assaulted Johnson; and,
second, that their delay in giving notice is excused by extenuating
circumstances.  The Petersons also argue that, even if Roger
Peterson was under an obligation to provide notice to Nationwide,
his wife Kathy Peterson and Pets America, Inc., were under no such
duty.  The court will consider each issue in turn.

*(a) Contractual Duty to Notify:*

The Petersons strangely argue that Nationwide is not entitled
to summary judgment because to them the insurance policy does not

cover the conduct which gave rise to Johnson's injuries.  In other words, they claim that the insurance policy does not cover a loss resulting from the intentional criminal conduct of an insured. Therefore, according to the Petersons, "[s]ince there was neither an 'accident,' nor an 'occurrence,' there was no obligation to notify Nationwide of the altercation under the terms of the [insurance policy], until the [c]ivil [c]omplaint was filed in September of 2005."  Def.'s Br. in Opp. to Mt. for Sum. Judg. at 15.

Ignoring, for a moment, the merits of the Petersons' interpretation of the insurance policy, this is a strange argument. If this court agrees with the Petersons and finds that they were under no duty to notify Nationwide of the incident because no "loss," "occurrence," or "accident" arose out of Roger Peterson's conduct, it follows that Nationwide is similarly under no duty to indemnify or defend the Petersons for claims arising out of a non-covered event.  Holding otherwise would permit the Petersons to have their cake and eat it too.

Putting aside this seeming contradiction, the court concludes that the Petersons' reading of the contractual language is incorrect.  First, as they acknowledge in another section of their brief, Johnson's complaint alleges multiple counts of negligence against the Petersons.  Id. at 23.  These claims are surely "loss[es]" as contemplated by the insurance policy, which states

that Nationwide "will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts . . . ."  Second, the term "occurrence" is defined in the policy as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition."  Hence, it is clear that at least some of Johnson's claims implicate Nationwide's duty to defend or indemnify.  From this it follows that both the Petersons and Nationwide are under an obligation to fulfill the contractual duties imposed upon them by the insurance policy.  The insureds are not authorized to decide for the insurer the coverage question or the possible exposure. All doubt must be resolved in favor of notifying the carrier so that it can intelligently evaluate the situation.

   *(b) Length of Delay*

   The Petersons' next argument is that the delay in providing Nationwide with notice was the product of extenuating circumstances and therefore was excusable.  Under Alabama law, courts interpret an insurance policy which requires that notice be given "as soon as practicably possible" to mean that notice must be given within a reasonable time.  *Pinson Trucking Equipment Co. v. Gulf American Fire and Casualty Co.*, 388 So.2d 955, 956 (Ala. 1980).  In determining the reasonableness of a delay in giving notice to an insurer, there are only two factors to be considered: (1) the length of the delay; and (2) the existence of a reasonable excuse

for that delay. *Southern Guarantee Insurance Co. v. Thomas*, 334
So.2d 879, 883 (Ala. 1976); *Acceptance Insurance Company v.
Schafner*, 651 F. Supp. 776, 777 (N.D. Ala. 1986).

It is undisputed that the Petersons waited almost two years
before giving Nationwide notice of the incident. Unquestionably,
such a delay violates the contractual requirement to provide prompt
notice. *Acceptance Insurance Company*, 651 F. Supp. at 778 (holding
that a delay of 6 months "warrant[ed] summary judgment in favor of
the insurer"). *See also Phoenix Assurance Co. v. Harris Harless
Co.*, 303 F. Supp 867 (N.D. Ala. 1969) (holding a delay of 4 months
entitled insurer to summary judgment). Therefore, unless the
Petersons can identify extenuating circumstances sufficient to
justify the delay, Nationwide is entitled to summary judgment.

In *Pan American Fire & Cas. Co. v. DeKalb-Cherokee Counties
Gas Dist.*, 266 So.2d 763 (Ala. 1972), the Alabama Supreme Court
held that "delay [in giving notice] is excusable in the case of an
accident [or occurrence] . . . which furnishes **no ground** for the
insured, acting as a reasonable and prudent man, to believe at the
time that a claim for damages will arise or that the injury is on
insured against." Id. at 771 (emphasis added). In such a
situation, "the duty of the insured is performed if it gives notice
within a reasonable time after the injury presents an aspect
suggestive of a possible claim for damages." 44 Am. Jur. 2d
Insurance §1338 (collecting citations). In Alabama, this "test is

not a subjective one measured merely by the good faith of the insured, but an objective one." *CIE Service Corp. v. Smith*, 460 So.2d 1244, 1247 (Ala. 1984).

The Petersons urge the court that their failure to provide notice is justified under the circumstances because they did not know, and could not reasonably have been expected to know, that the insurance policy covered intentional criminal acts. Def.'s Br. in Opp. to Mt. for Sum. Judg. at 19-20. The Petersons cite a number of cases which, they argue, support their position. However, these cases are not as conclusive as the Petersons would have them.

For example, in *CIE Service Corp. v. Smith*, 460 So.2d 1244 (Ala. 1984), a security company, which provided security services to an apartment complex, was sued by a tenant who was raped in her apartment. The court held that the security company, which gave notice to its insurance provider almost a year after the event, complied with the terms of its insurance policy because of the difficulty in anticipating suit for the criminal acts of a third party. The Petersons also point the court to *McDonald v. Royal Globe Insurance Company*, 413 So.2d 1046 (Ala. 1982), in which the insured, a nightclub, was sued after a fight between a bouncer and a patron, the eventual plaintiff. There, the court held that the nightclub was not unreasonable in failing to anticipate suit given the disputed nature of the facts surrounding the fisticuffs.

These two cases are easily differentiated from the present

case.  The Alabama Supreme Court, in both *McDonald* and *Smith*, held that where criminal conduct was carried out by a third party, the insured did not violate the terms of the policy by failing to provide "prompt" notice to the insurance provider.  The holdings in these cases, in part, reflect the reality that it can be very difficult to tell when and if suit will likely be filed in response to conduct in which the defendant was not a direct participant.  However, this sensible rule is not applicable in the present action because the criminal conduct at issue was not committed by a third party, but rather by **an insured**, Roger Peterson.  This is a critical difference.  Not only was Roger Peterson indisputably aware of the incident, given the nature of the criminal charges brought against him, he should, as a reasonably prudent person, have recognized the very real possibility that he might be sued.  Further, it makes no difference that Roger Peterson denies Johnson's allegations.  It is undisputed, given his arrest and prosecution, that Roger Peterson was aware that Johnson claimed physical injuries and alleged that Roger Peterson converted his weapon.  Such allegations commonly support civil actions for damages.  Under these circumstances, this court cannot conclude that the failure of the Petersons to promptly notify Nationwide was the product of extenuating circumstances.  Therefore, because the Petersons failed to provide notice as required by the insurance policy, Nationwide is entitled to summary judgment.

(c) *Nationwide's Obligations to Kathy Peterson and Pets*
    *America, Inc.*:

The Petersons argue that even if Roger Peterson was under a
contractual obligation to provide notice to Nationwide, his wife,
Kathy Peterson and their company, Pets America, Inc., were not.
Kathy Peterson, the insured named in the policy, does not argue
that she was never aware of the incident, but rather that she was
unaware of Johnson's intention to assert claims against her arising
out of the altercation.  Therefore, the argument runs, she and Pets
America, Inc., did not breach any contractual duty to notify
Nationwide.

In support of this position, the Petersons cite to *Hosey v.*
*Seibels Bruce Group, South Carolina Ins. Co.*, 363 So.2d 751 (Ala.
1978), which, they argue, stands for the proposition that "the
obligations of the insurer to [a husband and wife] were severable."
Def.'s Br. in Opp. to Mt. for Sum. Judg. at 26.   Therefore, the
breach of the policy by Roger Peterson does not necessarily
discharge Nationwide's obligation to a co-insured who had not
breached the policy.  The Petersons fairly characterize the holding
in *Hosey*.  However, the facts in *Hosey* are markedly different from
the facts in this case.

In *Hosey*, the Alabama Supreme Court dealt with an innocent
husband, whose wife committed insurance fraud and arson in burning
down the couple's residence.  The court stated that "[w]here the

property of an insured is tortiously destroyed by his or her spouse, the wrongful conduct is not attributed to the insured solely by virtue of the marital relationship." Id. at 753 (internal citation omitted). To put it another way, where fraudulent conduct at the hands of one spouse causes a non-covered loss, the innocent spouse will not necessarily forfeit his or her rights under the insurance contract.

The scenario described in *Hosey*, however, is fundamentally different from the position in which Kathy Peterson and Pets America, Inc., find themselves. Although Roger Peterson's intentional conduct gave rise to Johnson's claim, Nationwide does not level charges of fraud against him, and it is not on that basis that Nationwide seeks to deny coverage to Kathy Peterson. Rather, Nationwide argues that, however the claim arose, it was the failure of **both** Petersons to provide Nationwide with notice, when both were clearly aware of the incident, that obviates Nationwide's duties. In this, having already concluded that the delay in providing notice was not excused, the court agrees with Nationwide. As far as Pets America, Inc., is concerned, there is no basis whatsoever for finding it to be insured by Nationwide against Johnson's claim.

### IV. Conclusion

For the separate and several reasons stated above, the court concludes that Nationwide is entitled to judgment as a matter of law. Therefore, the court will grant its motion for summary

judgment by a separate order.

     DONE this 17th day of May, 2007.


_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE